Harris *v.* Farquhar, Appellant, et al.

Argued October 2, 1939.  Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

370

*Thomas L. Anderson,* with him *L. Albert Reed,* for appellant.

*Eugene C. Sloan,* with him *Luther Day, I. R. Morris* and *Bloom & Bloom,* for appellee.

OPINION BY MR. JUSTICE BARNES, January 2, 1940:

This is an appeal by defendant from a decree ordering him to account to plaintiff for fees received for medical services rendered to the miners (and their families) who were employed by the Pittsburgh Coal Company at its Crescent Mine near California in Washington County.

In February, 1935, the United Mine Workers of America, Local 1787, advertised for the services of two physicians to provide contract medical services for its members who worked at the Crescent Mine. The resolution of the union authorizing the advertisement provided that the members thereof should elect two physicians from the number of the applicants. Among the fourteen physicians who applied for the positions were the plaintiff, Dr. Max Harris, and the defendant, Dr. J. W. Farquhar. The successful candidates were Dr. Farquhar and a certain Dr. Carson, who were elected at a special meeting of the local union held on February 23, 1935.

The method of payment of the doctors, as provided by the resolution, was by means of the "check-off" sys-

tem, whereby for the accommodation of the union members and the doctors, a fixed charge was deducted by the coal company from the monthly wages of each miner, and the proceeds distributed equally between the two physicians. This arrangement worked satisfactorily until October 20, 1935, when Dr. Carson submitted his written resignation, which was accepted by the union. Thereupon the union adopted a resolution to advertise for applicants and elect a doctor "to replace Dr. Carson."

In response to the advertisement which followed, plaintiff again filed an application for the position, and was subsequently elected on October 30, 1935. A committee of members authorized to notify him of his election and to arrange the details of his employment, informed him that his compensation would be "on a fifty-fifty basis with Dr. Farquhar." Plaintiff accepted these terms and the coal company was notified by the union to pay one-half of the check-off to him. He made immediate arrangements to enter upon his duties which involved extensive changes in his practice. He visited Dr. Farquhar to discuss the manner in which they should coöperate or divide the services to be performed under the arrangement, but the latter refused to recognize him as his associate, asserting that he alone had the right to select the successor to Dr. Carson.

From November 1, 1935 until December 31, 1936, the period involved in this proceeding, plaintiff has rendered medical services to all members of the union and their families who requested it. The coal company, however, declined to follow the notice to pay one-half of the check-off to plaintiff, but paid the entire fund to defendant, who refused to share it with plaintiff. As a result, plaintiff has received but $1,542.40 for his services, while within the same period of fourteen months defendant received from the check-off the sum of $15,791.90. The union endeavored to correct the unequal distribution that was being made of the wage

deductions by encouraging its members to sign formal authorizations to the company to pay the individual check-offs to Dr. Harris, but when so directed the company suspended the making of deductions.

Plaintiff then filed this bill against Dr. Farquhar and the coal company to compel them to account for his one-half share of the moneys deducted from the wages during the period in question, and to restrain the company from continuing to make the check-off for the sole benefit of Dr. Farquhar. A preliminary injunction was refused, and after the defendants had answered, the case proceeded to a hearing. The court thereafter entered a decree nisi restraining the company from making the check-off unless the proceeds were applied in accordance with the terms of the employment of the doctors by the union,—that is, by equal division between them. Each individual party was ordered by the court to render an accounting to the other of all moneys received. The court in banc after a rehearing entered a final decree dismissing the exceptions filed by Dr. Farquhar, but sustained those on behalf of the company, and dismissed the bill as to it. From the decree so entered Dr. Farquhar has appealed.

No objection was made to the dismissal of the bill with respect to the company, therefore the sole question before us is whether plaintiff and defendant must account to each other on an equal basis for the fees received by them through the check-off arrangement with the coal company. Defendant contends that he was under no contractual obligation to the local union, or to plaintiff, to make any division of these funds, inasmuch as his employment was directly with the individual members of the union. It is his assertion that the miners, in permitting deductions from their wages to be made for his benefit, in effect assigned to him such portions of their pay.

Both plaintiff and defendant, so far as this case is concerned, were engaged in the contract practice of

medicine, of a character recognized and approved by the American Medical Association. The members of the local union entered into a collective bargaining arrangement with the two doctors for medical services. Such a collective agreement, initiated by a general offer, becomes a binding contract when its terms are made a part of the contract of employment. In consequence, the right of the doctors to be compensated for the professional services they rendered is dependent upon the terms of their contracts with the union.

These terms were originally set forth in the resolution of the union adopted in February, 1935, providing for the election of two doctors and the equal division between them of the fund raised by the check-off. The advertisement made, pursuant to the resolution, specifically stated that *two doctors* were to be selected. The conditions upon which the union was willing to make the collective arrangement were carried into defendant's contract of employment when he accepted the position upon notification that he was one of the successful applicants. There was no reservation upon his part that he should choose his co-physician, or select his successor should a vacancy subsequently occur. While defendant may not have had a copy of the resolution defining the terms of the employment, or had knowledge of its exact wording, he must, under all the circumstances, have understood that he would be compelled to share the proceeds of the check-off with the other successful applicant.

Defendant calls to our attention the resolution adopted by the union on April 7, 1935, rescinding the original resolution to the extent that it regulated the division of the compensation, and permitting Dr. Farquhar and Dr. Carson to adjust that matter between themselves. There is no evidence, however, that any change was made in the respective shares of compensation, and communicated to the union. There was no surrender by the union of its right to approve such

arrangement. Nothing appears to show that the essential terms of the contract between defendant and the union were modified by this resolution. The selection of Dr. Carson's successor, and the basis of his remuneration, still remained within the control of the union, subject to defendant's right to one-half of the wage deductions. There is nothing in the record to sustain the contention that the resignation of Dr. Carson entitled defendant to retain substantially the entire amount of the compensation intended for both of the union physicians. See *McGee's Est.*, 205 Pa. 590.

We can see no merit in defendant's contention that his right to remuneration is based upon individual contracts with the members, for the reason, as we have said, that whatever claim he possessed arose solely upon his contract with the union. It was under this contract that the fund was created by check-off for his compensation, and under it was made the assessment of the fixed amount upon the individual miners, regardless of their particular medical requirements. His fees had no relation to the service he rendered in any individual case, and of course, were not paid to him directly by his patients.

Nor is there any merit in the assertion by defendant that when the union by resolution authorized the individual members to direct the company to suspend the payments to him and to make them to Dr. Harris, those who failed to do so impliedly assigned to him the check-off portion of their wages. It was not the purpose of the resolution to assign the deduction in its entirety to defendant in violation of the union's contract with plaintiff, but only to overcome the situation that arose by reason of the refusal of the defendant and the coal company to recognize the plaintiff as one of the two union physicians.

From our review of the record we are of opinion that defendant has shown no justification for his retention of more than fifty per cent of the check-off due him

under the terms of his contract with the local union. Therefore, we conclude that defendant has improperly retained sums of money lawfully owing to the plaintiff for which he should be compelled to account. The decree of the court below affords plaintiff the relief to which he is clearly entitled.

Decree affirmed at appellant's cost.